364 A.2d 306
COMMONWEALTH of Pennsylvania, Appellant,
v.
Gerald HUGHES, Appellee.

Supreme Court of Pennsylvania.

Argued Nov. 15, 1974.

Decided Oct. 8, 1976.

504

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, Martin H. Belsky, Washington, D. C., for appellant.

Jay S. Gottlieb, Needleman, Needleman, Tabb & Eisman, Ltd., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

On June 12, 1973, there was a conflagration punctuated by several explosions at an ink manufacturing plant located in the 1200 block of Washington Avenue in the City of Philadelphia. As a result of this holocaust, appellee, Gerald Hughes, was arrested on August 9, 1973, and indicted on two counts of involuntary manslaughter and a violation of Section 3302(b) of the New Crimes Code.[1] Appellee had filed on his behalf an "Application to Quash Bill of Indictment" charging that Section 3302 was unconstitutionally vague. This application was sustained by the motion judge and the Commonwealth appealed pursuant to the Appellate Court Jurisdiction Act of 1970, July 31, P.L. 673, No. 223, art. II § 202; 17 P.S. 211.202(9) (Supp.1975–76).[2] The single issue raised in this appeal is the constitutionality of Section 3302(b).

The evidence produced at the preliminary hearing by the Commonwealth which was stipulated by the parties for a decision upon this application, set forth the following series of events. Frederick H. Levey Division of Cities Service Company, a manufacturer of various types of ink products, owned a complex consisting of three buildings and a yard occupying ¼ of a city block. One of the products produced by the company was gravure ink which contained 70% lactol, a highly flammable solvent.

1. 1972, Dec. 6, P.L. 1482, No. 334, § 1, 18 Pa.C.S. 3302(b) eff. June 6, 1973.

2. While the instant appeal relates only to one of the three indictments returned by the grand jury, it was without question the final order as to the indictment founded upon Section 3302(b). Further, it was appropriate for the Commonwealth to hold the trial on the unaffected indictments in abeyance until the resolution of the instant issue. See, *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 (1973), vacated and remanded, *Pennsylvania v. Campana*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), re-established *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974).

Because of the presence of this highly flammable substance, the company had repeatedly warned against smoking on the premises. In addition to this strict smoking restriction, the company supplied their employees with special clothing.

Appellee, an employee of Levey Co., gave a statement during the course of this investigation that he had carried a container of solvent in a five gallon pail from one location to another and in the course of this operation spilled approximately one-half gallon of the substance. He placed the container of the remaining solvent on the floor where he was standing and after ascertaining that there was no one in the area to observe him, he attempted to light a cigarette. His attention was momentarily diverted causing him to drop the lighted match. His safety shoes caught fire and he kicked them off, each shoe being aflame and landing in different directions.

The resultant fire raged uncontrolled for approximately four hours. Numerous injuries were sustained including the death of two firemen.[3] In fighting the conflagration, eight alarms were sounded and a total of 55 pieces of apparatus were used. Because of the violent explosions, families from neighboring homes had to be evacuated and the property damage was extensive.[4]

The motion judge was of the view that the challenge of vagueness required a facial analysis rather than an examination of the statute in the context of the facts of the instant case. Employing this approach that court found the word "catastrophe" was not sufficiently precise and therefore held that the statute was void for vagueness. We do not agree for the reasons that follow.

**3.** The injured included 38 firemen, one policeman and three civilians.

**4.** Fifty-one properties were evacuated which involved a total of 109 residents.

First, the use of facial analysis in this instance is inappropriate. As we stated in *Commonwealth v. Heinbaugh,* 467 Pa. 1, ——, 354 A.2d 244, 245 (1976), "Absent the assertion of an infringement of First Amendment freedoms, the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged." This position is in agreement with recent decisions of the United States Supreme Court. In *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), the Court observed, "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." [citation omitted]. See also Comment, Recent Supreme Court Developments of the Vagueness Doctrine, 7 Conn.L.Rev. 94 (1974); Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970); Amsterdam, The Void for Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960). Since in the instant case it is clear that appellee asserts no First Amendment claims his challenge to the statute must be analyzed in the context of the specific conduct in which he engaged.

Section 3302 attempts to meet two separate and distinct societal harms. In paragraph (a) it purports to punish *for the damage caused* by the mishandling of certain enumerated highly dangerous forces or substances.[5] Paragraph (b) addresses the *exposure to harm* created by the misuse of these forces or

---

5. Section 3302(a) provides:
 "A person who causes a catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly." Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3302(a).

substances.[6] At the time the motion court was called upon to consider and decide this issue, appellee had been indicted only upon Section 3302(b). At the urging of the parties, the court extended its ruling to include the entire section.[7] We have consistently cautioned courts not to reach issues not then before them and now repeat that admonition. *Phillips Home Furnishings, Inc., v. Continental Bank,* 467 Pa. 43, 354 A.2d 542 (1976); *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975); *Benson v. Penn Central Transportation Co.,* 463 Pa. 37, 342 A.2d 393 (1975) "Orderly judicial procedure requires that nothing more be passed upon by a court than the justiciable question posed for its decision." *Robinson Township School District v. Houghton,* 387 Pa. 236, 240, 128 A.2d 58, 60 (1956). That the Commonwealth expressed its intention to secure an indictment under Section 3302(a) did not alter the fact that at the time of the decision upon this application an indictment under that section had not been returned. At first blush it may appear that anticipatory rulings might foster judicial economy, however, experience has demonstrated that they create more problems than they resolve. See *Commonwealth v. Peterman,* 430 Pa. 627, 244 A.2d 723 (1968). We therefore will only consider the constitutional challenge that was properly before the court, i. e., the challenge to Section 3302(b).

In discussing the dangers inherent in vague legislation, the United States Supreme Court has had occasion to observe:

"It is a basic principle of due process that an enactment is void for vagueness, if its prohibitions are not

6. Section 3302(b) provides:
 A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section
 Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3302(b).

7. The grand jury subsequently indicted appellee under Section 3302(a) at No. 1796 December Term, 1973.

clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

*Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (Footnotes omitted).

In setting forth the standard that laws must provide the "person of ordinary intelligence a reasonable opportunity to know what is prohibited", the Court has not been unmindful of the element of imprecision necessarily inherent in the use of the English language.

"Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulour specificity,' (Citation omitted), but we think it is clear what the ordinance as a whole prohibits." (Footnote omitted). *Id.* at 110, 92 S.Ct. at 2300.

\* \* \* \* \* \* \* \*

" '[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently un-

derstand and comply with, without sacrifice to the public interest.'" *Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973).

Another fundamental principle which must be borne in mind in the resolution of the issue before us is the new rule of construction of criminal statutes that has been adopted in the New Crimes Code, supra, 18 Pa.C.S. § 105 which provides in pertinent part:

> "The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved."

Turning to an analysis of the section in question the historical note appended calls attention to the fact that the section has been taken from the Model Penal Code, Section 220.2.[8] Setting forth the purpose sought to be accomplished by this provision, the Comment to the Model Penal Code states:

> "This section introduces a new concept in Anglo-American penal law. It is patterned on European legislation dealing with activity creating a "common danger." Fire, dealt with by the law of arson, is the prototype of forces which the ordinary man knows must be used with special caution because of the potential

---

8. The American Law Institute's Model Penal Code, § 220.2 (Tentative Draft No. 11) (1960) provides:

 (1) *Causing Catastrophe.* A person who causes a catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other deleterious force or substance, or by any other means of causing potentially widespread damage, commits a felony of the second degree, if he does so purposely or knowingly, or a felony of the third degree, if he does so recklessly.

 (2) *Risking Catastrophe.* A person is guilty of a misdemeanor if he recklessly creates a risk of catastrophe by his conduct in relation to fire, explosives, or other dangerous means listed in subsection (1).

for wide devastation. Modern legislation puts explosion, flood, poison gas, and avalanche in the same category, and modern technological development alerts us to possibilities of catastrophe in mishandling radioactive material." (Footnote omitted).

It is thus apparent that the legislature recognizing the catastrophic effects that can result from the reckless use of the enumerated forces or substances determined to punish under Section 3302(b), those who would expose the public to an unreasonable risk because of their reckless handling of these forces or substances. Although not challenging that the societal harm is an appropriate subject for legislation, it is urged by appellee that the terms "risk" and "catastrophe" were not sufficiently defined.

Appellee argues that "risk" is a quantitative standard and as such is totally ambiguous. "The degree of the 'risk' is not stated. This could only lead to an *ad hoc* and subjective standard with arbitrary and discriminatory application." In our judgment this argument is superficial and fails to fully analyze the section in question. First it must be remembered that the forces or substances covered by this provision are inherently dangerous and their improper handling is capable of causing widespread devastation.[9]

■■ Further, appellee's argument ignores the mental state which must accompany the conduct. Under this provision the offender must "recklessly create a risk."

9. It is not uncommon for legislatures to curtail and control the use of highly dangerous instrumentalities. Carrying firearms on public streets or public property in Philadelphia, Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 6108; carrying explosives on conveyances, Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 6161; shipping explosives, Act of December 6, 1972, P. L. 1482, No. 334, § 1, 18 Pa.C.S. § 6162; refrigerators and iceboxes, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 6502.

The Crimes Code, supra, 18 Pa.C.S. § 302(b)(3) defines reckless culpability:

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation."

Thus, the degree of culpability required by Section 3302(b) is very specific; a *gross deviation* from the standard of conduct that a reasonable person would observe in the actor's situation. The "risk" proscribed by this legislation is the use of dangerous means by one who "consciously disregards a substantial and unjustifiable risk" and thereby *unnecessarily* exposes society to an extraordinary disaster.

█ We cannot accept appellee's view that there is a lack of specificity of the prohibited conduct. While the section does not enumerate those circumstances under which an unreasonable risk of injury or damage would exist, we do not believe such precision is required.[10] Given the volatile nature of the substance here involved, the

10. In upholding a Kentucky disorderly conduct statute which provided in part that one could not "recklessly [create] a risk" of "public inconvenience, annoyance or alarm", the United States Supreme Court observed:

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. We agree with the Kentucky court when it said: 'We believe that citizens who desire to obey the statute will have no difficulty in understanding it . . . '" (Citations omitted). *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

repeated warnings against the use of matches in the area and the obvious possible consequences of ignoring these precautions, it is clear that a person in the situation of the appellee should have been fully aware that his conduct was proscribed by the provisions of this section.

We are also of the view that the term "catastrophe" is sufficiently precise to designate the extent of the harm sought to be presented by this section. Reading sections (a) and (b) together, it is clear that the forces or substances intended to be regulated are those which are capable "of causing . . . widespread injury or damage". Thus, construing Section (b) in accordance with the fair import of its terms the word "catastrophe" is intended to be synonymous with "widespread injury or damage." Among the meanings offered for the word, "catastrophe" in Webster's Third New International Dictionary (G. & C. Merriam Co. 1966), is "an extraordinary disaster". Roget's Thesaurus (Garden City Books, Revised Ed.1936), supplies "calamity" and "disaster" as suitable synonyms. We believe that the term "catastrophe" as used here conveys not only a quantitative but a qualitative distinction. The degree of precision is comparable in our judgment to the well-known distinction between a simple assault and an aggravated assault. The fact that the latter terms are more familiar in our system of jurisprudence is of little consequence. As courts and juries were able to distinguish the qualitative difference between simple and aggravated assault, so too will they be able to discern conduct that creates the risk of a catastrophe.[11]

11. In reaching its decision, the lower court stressed the fact that Section 3302(a), Causing a Catastrophe, was not readily distinguishable from the lesser offense of Criminal Mischief, Crimes Code, *supra*, 18 Pa.C.S. § 3304. We need not reach this question *in view of our determination that the validity of Section 3302(a) is not properly before us.*

Order of the court below is hereby reversed and the matter is remanded for additional proceedings consistent herewith.

Mr. Justice ROBERTS and Mr. Justice MANDERINO concurred in the result.