Accordingly, the Commonwealth's petition for a Writ of Prohibition is denied.

392 A.2d 1350

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**David McGINNIS, Appellee (two cases).**

Supreme Court of Pennsylvania.

Submitted Jan. 18, 1977.

Decided Oct. 5, 1978.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty. Chief, Appeals Div., Maxine J. Stotland, Asst. Dist. Atty., Philadelphia, for appellant.

Defender Assn. of Philadelphia, John W. Packel, Louis A. Perez, Jr., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

PER CURIAM.

 Appellee, David McGinnis, was charged with arson, risking catastrophe, recklessly endangering another person, possessing an instrument of crime and possessing an offensive weapon. The case proceeded to trial without a jury and, following the close of the Commonwealth's case, the trial court sustained the defendant's demurrer to the evidence relative to the offenses as charged.[1] This appeal followed.[2]

Accepting the Commonwealth's evidence as true and considering all reasonable inferences arising therefrom, see *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977), we are of the view that the prosecution's evidence failed to establish the crimes of which the defendant stood charged and that therefore the demurrers were properly sustained.

Orders affirmed.

ROBERTS, J., filed a dissenting opinion in which EAGEN, C. J., and LARSEN, J., join.

ROBERTS, Justice, dissenting.

David McGinnis was charged with arson, risking catastrophe, possessing an instrument of crime, possessing an offensive weapon, and recklessly endangering another. All the charges stemmed from McGinnis' participation in the firebombing of an automobile belonging to Rademas Santiago

1. The trial court also concluded that a section of the new Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 3302—risking catastrophe—was unconstitutionally vague. Such an argument has previously been rejected by this Court in *Commonwealth v. Hughes*, 468 Pa. 502, 364 A.2d 306 (1976).

2. Section 202(9) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(9), 17 P.S. § 211.202(9) places jurisdiction in this Court for appeals from any order of a court of common pleas holding a statute to be unconstitutional (see n. 1, *supra*). The appeal from the dismissal of the charges because the demurrer to the evidence was sustained was originally taken to the Superior Court, and transferred to this Court following the appeal on the constitutional issue.

and parked in front of the Santiago residence, a house in a residential block of Philadelphia. The case was tried, without a jury, in the Philadelphia Court of Common Pleas. After the Commonwealth presented its case, the trial court dismissed the risking catastrophe charge and sustained demurrers to the remaining charges. The Commonwealth appealed.

Accepting the Commonwealth's evidence as true and considering all reasonable inferences arising from it, *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977); *Commonwealth v. Smallwood*, 465 Pa. 392, 399, 350 A.2d 822, 825 (1976), it must be concluded that there was sufficient evidence to find appellee guilty of all charges beyond a reasonable doubt. I dissent from the majority's conclusion to the contrary.

I

The Commonwealth's evidence reveals that appellee intentionally set fire to Santiago's station wagon. Lt. Edward F. Smith of the Philadelphia Fire Department testified that, in response to an alarm, he arrived at the 4400 block of North 4th Street about 12:57 a. m. on the night of September 25, 1975. He observed that the Santiago automobile was still smoldering from a fire neighbors were attempting to extinguish with a garden hose. The fire had centered on the front passenger seat where Smith discovered a partially melted one gallon plastic milk carton containing a small amount of gasoline. The front passenger window had been broken and on the ground next to the front passenger door he found the broken head of a claw hammer. The lieutenant testified that the fire was the result of arson.

The 4400 block of North 4th Street consists of two story row houses with wooden front porches over which second floor bedrooms extend. The automobile in question was parked five to six feet from the wooden porches of the houses at 4419 and 4421 North 4th Street. The court sustained defense counsel's objection to a hypothetical question regarding what may have happened had the fire not

been extinguished. Instead it took judicial notice "of the fact that if you don't put out a fire, sooner or later you can engulf a whole city." [1]

Appellee's confession was also introduced into evidence.[2] In it he admitted that at the suggestion of one Ronald Hanley, defendant siphoned gasoline from Hanley's car into a wine bottle. Appellee later transferred the gas into a "coffee can" because he was concerned that the bottle would not break on the car's seat. Using a hammer, Hanley broke the front window on the passenger side. During that process the head fell off the hammer. The defendant's statement reveals that appellee then set the fire:

"I walked down, and I had a little doll's leg stuck in the top of the can. It had like cotton inside the leg. I took the leg out and threw the gas in the back and front seat and then threw the can in the front seat. I had the doll's leg inside laying on the side of the car's door. I lit the match and put it to the doll's leg and like the side of the car went up. I grabbed the leg out of the fire and threw it into the car, and then I ran down 4th Street to Wingohocken and into the house, and that was it."

Finally a stipulation was entered that if Rademas Santiago were present he would testify that he lived at 4419 North 4th Street, that the station wagon was his, he had given no one permission to use or destroy his car, all the windows were up when he went to bed that evening and he did not keep any gasoline in his car.

## II

Section 3301 of the Pennsylvania Crimes Code, 18 Pa.C. S.A. § 3301, provides in pertinent part:

"§ 3301. Arson and related offenses.

1. R. 21a.

2. The statement had been held admissible at a prior suppression hearing. At trial appellee renewed his objections to the admissibility of the statement.

(a) Endangering persons.—A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, whether on his own property or on that of another, and thereby recklessly places another person in danger of death or bodily injury.

(b) Endangering property.—A person commits a felony of the second degree if he:

\* \* \* \* \* \*

(2) intentionally starts a fire or causes an explosion, whether on his own property or on that of another, and thereby recklessly places a building or occupied structure of another in danger of damage or destruction; . . ."

The evidence and all the reasonable inferences therefrom is sufficient to support a conviction for arson under § 3301(a) and (b)(2). The Commonwealth demonstrated that appellee intentionally started a fire in an automobile parked only five to six feet from row homes with highly flammable wooden front porches. From this the inference can be reasonably drawn that in igniting the gasoline soaked Santiago vehicle appellee consciously disregarded a substantial risk that the automobile would explode, spreading the fire to the nearby occupied dwellings. See 18 Pa.C.S.A. § 302(b)(3) (defining "recklessly"). Had the fire not been discovered and extinguished by neighbors, it could have spread rapidly, leaving death and destruction in its path.

Appellee would limit the scope of § 3301(a) and (b)(2) to instances where an actor sets a fire or causes an explosion on real property. This interpretation of the section's language is clearly erroneous. The comment to § 220.1 of the Model Penal Code, upon which the Pennsylvania Crimes Code is based, indicates that the primary concern addressed by § 3301 is the tremendous risk of harm arising from fire and explosion. See Model Penal Code, Tentative Draft No. 11 at 34–42 (1960). See also, 18 Pa.C.S.A. § 105. The comment to the Model Penal Code notes that § 220.1(2), the prototype for § 3301(a) and (b)(2), includes three traditional situations:

"(a) burning one's own property in circumstances where there is a high risk that the fire will spread to property of others . . . (b) burning of lesser forms of property in proximity to the specifically valued categories . .; and (c) other recklessness in relation to special categories of highly regarded property, e. g., setting fire to a haystack or a pile of trash near a dwelling, where no burning of the dwelling itself occurs."

This case constitutes a modern, urban example of the third type of situation. Fire was intentionally set to a highly flammable object near a dwelling. Although fortunately the row houses did not burn, the risk of danger to the buildings and their inhabitants was very high. Thus, as long as there is a substantial and unjustifiable risk that an intentionally set fire or explosion will destroy an occupied structure or endanger a person, the harm against which § 3301 seeks to protect is present. It would be illogical to conclude that the creation of this risk is any less culpable when the fire is started on personalty rather than on other realty. The Model Penal Code comments, the terms of the statute, and the record convince me that the Commonwealth presented more than sufficient evidence to sustain the arson charges.

### III

The same evidence that supports the arson charges also supports the charge of recklessly endangering another person. The applicable section of the Crimes Code, 18 Pa.C.S.A. § 2705, provides:

"§ 2705. Recklessly endangering another person.

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

This section deals with potential risks recklessly created by the defendant. There is no requirement that any person actually be placed in danger. Appellee set fire to an automobile in close proximity to inhabited row houses with wooden porches at approximately 12:45 a. m. on a week

night when most people are asleep. In so acting, appellee disregarded the risk of explosion and the subsequent spread of the fire to the houses. Fire, of course, is a source of death or serious bodily injury. Thus, there was sufficient evidence to find appellee guilty of violating § 2705.

The sections of the Crimes Code under which appellee was charged with possessing instruments of crime and prohibited offensive weapons provide in pertinent part:

"§ 907. Possessing instruments of crime.

(a) Criminal instruments generally.—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

\* \* \* \* \* \*

(c) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

'Instrument of crime.'

(1) Anything specially made or specially adapted for criminal use; or

(2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have."

"§ 908. Prohibited offensive weapons.

(a) Offense defined.—A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.

(b) Exception.—It is a defense under this section for the defendant to prove by a preponderance of evidence that he possessed or dealt with the weapon solely as a curio or in a dramatic performance, or that he possessed it briefly in consequence of having found it or taken it from an aggressor, or under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully.

(c) Definition.—As used in this section 'offensive weapons' means any bomb, grenade, machine gun, sawed-off

shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose."

Viewed in the light most favorable to the Commonwealth, the evidence clearly establishes that appellee was in possession of an incendiary device specially made for criminal use. Appellee's concern with whether the container holding the gasoline would break when thrown on the car seat, indicates that he wanted to make a firebomb. He used the doll's leg as a "fuse" for what is commonly known as a "Molotov cocktail." That he actually utilized the device to start the fire establishes his intent to use the instrument for a criminal purpose. Accord, *Commonwealth v. Hardick*, 475 Pa. 475, 380 A.2d 1235 (1977) (safe-cracking tool).

Further, that incendiary device was an offensive weapon within the meaning of § 908. I can perceive of no "common lawful purpose" that a firebomb may serve. Compare *Commonwealth v. Cartagena*, 482 Pa. ——, 393 A.2d 350 (1978) (simple kitchen knife not a prohibited offensive weapon) with *Commonwealth v. Ponds*, 236 Pa.Super. 107, 345 A.2d 253 (1975) (inoperable sawed off shotgun is prohibited offensive weapon).

The final charge against appellee was under § 3302 of the Crimes Code which provides:

"(a) Causing catastrophe.—A person who causes a catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage, commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly.

(b) Risking catastrophe.—A person is guilty of a felony of the third degree if he recklessly creates a risk of

catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section."

The trial court dismissed the bill of indictment charging appellee with risking catastrophe, holding § 3302(b) unconstitutional. The majority's per curiam opinion does not reach the issue thus raised. There is, therefore, no need to discuss it in this dissenting opinion.[3]

The trial court further indicated that it would have sustained a demurrer to the risking catastrophe charge. Here too, the evidence viewed in the light most favorable to the Commonwealth is sufficient to convict. The same facts on which appellee may be found guilty of arson support this charge. The trier of fact could conclude that in setting fire to the automobile, appellee consciously and unjustifiably created a risk of widespread damage to the home and of injury to the residents of the 4400 block of North 4th Street.

Accordingly, I would reverse and remand for a new trial on all charges.

EAGEN, C. J., and LARSEN, J., join in this dissenting opinion.

---

**3.** I will note, however, that in *Commonwealth v. Hughes*, 468 Pa. 502, 364 A.2d 306 (1976), this Court held that § 3302(b) was not unconstitutionally vague.