443 A.2d 825

**COMMONWEALTH of Pennsylvania**

v.

**Richard D. SIMKINS, Appellant.**

Superior Court of Pennsylvania.

Argued March 23, 1981.

Filed March 26, 1982.

---

John R. Gailey, Jr., York, for appellant.

Sheryl Ann Dorney, Assistant District Attorney, York, submitted a brief on behalf of Commonwealth, appellee.

Before PRICE, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

Richard D. Simkins was convicted by a jury of risking a catastrophe[1] and possession of methamphetamine, a violation of the Controlled Substance, Drug, Device and Cosmetic Act.[2] Post-verdict motions were denied, and Simkins was sentenced to concurrent terms of imprisonment for not less than three nor more than twenty-three months. On appeal, he contends (1) that the evidence was insufficient to sustain the conviction for risking a catastrophe; (2) that the trial court erred in granting a Commonwealth request to extend the time for commencing trial; (3) that the trial court erred in refusing to suppress the Commonwealth's evidence; (4) that the court erred in refusing to sever the two charges for purpose of trial; and (5) that the trial judge erred in allowing evidence which showed the presence in appellant's rented house of substances used in the manufacture of amphetamines. We agree that the evidence did not establish the offense of risking a catastrophe; and, therefore, we set aside and vacate the judgment of sentence for that offense. Appellant's remaining assignments of error lack merit, however, and the judgment of sentence for possessing amphetamines will be affirmed.

On January 12, 1977, a fire occurred at premises leased by appellant in rural York County. Firemen quickly responded, entered the dwelling, and put out the fire. Inside the dwelling they found evidence that the premises had been used for the manufacture of amphetamines. Included among various substances found on the premises were quantities of acetone, a volatile and highly flammable chemical. A fifty-five gallon drum of acetone, having a three inch opening stuffed with paper towels, was discovered in the basement, less than ten feet from an oil-fired heater. In fact, however, the fire had started at or near the sofa in the

---

1. 18 Pa.C.S.A. § 3302(b).

2. Act of April 14, 1972, P.L. 233, No. 64, § 1, 35 P.S. § 780–101 et seq.

first floor living room and had been extinguished before igniting the acetone or any other chemical substance kept in the house. The Commonwealth contended that appellant had risked a catastrophe because of the manner in which the acetone had been stored on the property.

Risking a catastrophe is a crime which was unknown to the law of Pennsylvania prior to the passage of the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S.A. § 3302.[3] The offense is defined in 18 Pa.C.S.A. § 3302(b) as a felony of the third degree, if a person "recklessly creates a risk of catastrophe *in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.*" (Emphasis added.) The offense of risking a catastrophe, it will be observed, can occur *only* in the employment of fire, explosives or other dangerous means listed in subsection (a).

The forces or substances identified by 18 Pa.C.S.A. § 3302(a), which defines the offense of causing a catastrophe, include: "explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material . . . or by any other means of causing potentially widespread injury or damage. . . ."

■ Acetone is not one of the forces or substances specifically enumerated by the statute. Therefore, if it is to be a substance whose handling can subject an actor to criminal liability for risking a catastrophe, it must be because the actor's "improper handling [of the substance] is capable of causing *widespread devastation.*" *Commonwealth v. Hughes*, 468 Pa. 502, 512, 364 A.2d 306, 311 (1976) (footnote omitted) (emphasis supplied).

■ "The 'risk' proscribed by this legislation is the use of dangerous means by one who 'consciously disregards a *substantial* and *unjustifiable risk*' and thereby unnecessarily

**3.** Causing or Risking a Catastrophe, 18 Pa.C.S.A. § 3302, is derived from Section 220.2 of the Model Penal Code. The comments to Section 220.2 note that it is patterned on European legislation dealing with activity creating a "common danger." American Law Institute's Model Penal Code, § 220.2 (Tentative Draft No. 11) (1960).

exposes *society* to an *extraordinary disaster."* *Common-wealth v. Hughes,* supra, 468 Pa. at 513, 364 A.2d at 311 (emphasis omitted and supplied).

■ The Commonwealth's evidence in the instant case failed to establish that appellant's conduct in storing the acetone as described was either reckless or created a potential for an "extraordinary disaster." Rather, the Commonwealth showed a negligent storage of acetone which the Commonwealth's witness declined to testify had the potential for "widespread injury or damage." The orbit of danger, the expert said, included only appellant and the dwelling in which he had stored the acetone.[4] We conclude, therefore, that the Commonwealth failed to prove reckless conduct which created the type of risk proscribed by 18 Pa.C.S.A. § 3302(b).

In *Commonwealth v. Hughes,* supra, the Supreme Court stated that "the term 'catastrophe' is sufficiently precise to designate the extent of the harm sought to be prevented by this section . . . . We believe that the term 'catastrophe' as used here conveys not only a quantitative but a qualitative distinction." Id., 468 Pa. at 514, 364 A.2d at 312. The defendant in *Hughes* had violated a known company restriction against smoking while handling lactol, a highly flammable substance. He was carrying an open bucket of lactol from one area of a center-city factory to another and had spilled some of it while transporting it. He placed the bucket on the floor and, after having ascertained that there was no one in the area to observe him, attempted to light a cigarette. However, he was distracted and dropped the lighted match into the five gallon pail of solvent. The bucket, areas of the floor and the defendant's safety shoes caught fire. He then kicked his burning shoes in different directions. The resulting fire and explosions raged out of control for four hours, causing injury to thirty-eight fire-

---

4. It was established at trial that appellant's dwelling, located on a dirt road in a rural area of York County, was 102 feet from the nearest building.

men, one policeman, three civilians and the death of two firemen. The fire also required the evacuation of families from fifty-one nearby homes. The defendant had been aware of the risk entailed in lighting a match while carrying an open container of the highly flammable solvent. His conduct evidenced a conscious disregard of a known risk and also the company's safety rule. By this disregard of known safety requirements, he recklessly exposed other employees, the occupants of neighboring buildings and the surrounding property itself to widespread and serious injury and damage.

In the instant case, the risk which the Commonwealth contended appellant's conduct had created was that acetone would ignite. This arose because the drum of acetone had been stored in the basement, sealed only with paper towels, in proximity to the heater. We conclude that this was insufficient to prove recklessness. There may have been carelessness in the manner in which the acetone was stored, but the fact that it had not been used in the basement and that, while stored, the container had been closed, albeit inadequately, negatived the conclusion appellant had acted recklessly in disregard of a risk of extraordinary disaster.[5] Moreover, the evidence failed to show that ignition of the acetone was likely to cause a catastrophe. Fire involving a single residence, unoccupied except by the actor, is not the type of widespread damage contemplated by the statutory term "catastrophe." See and compare: *Commonwealth v. McGinnis*, 481 Pa. 394, 403, 392 A.2d 1350, 1354–1355 (1978)

5. It is interesting to note that the state police took no steps to have the acetone removed from the house following the fire, although they were empowered to do so under 35 P.S. § 1183. At the preliminary hearing on March 18, 1977, two months after the fire, both investigating officers testified that to the best of their knowledge, the acetone was still in the basement of the house. In fact, the owner of the house had removed it several weeks after the fire.

It is also curious that the contents of the drum had never been measured to ascertain the quantity remaining in the container at the time of or immediately following the fire. Police officers testified at trial that they had identified the substance as acetone solely on the basis of its smell and the label on the opened drum.

(Roberts, J., dissenting); *Commonwealth v. Martinez*, 12 D & C 3d 780, 781–782 (1980).

■ Appellant's contention that the trial court erred in granting an extension of time within which to commence trial is lacking in merit. The delay in commencing trial occurred so that the court could hear and consider appellant's motion to suppress evidence. This is the type of "judicial delay" for which an extension of time can properly be granted. See: *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976); *Commonwealth v. Schaszberger*, 285 Pa.Superior Ct. 586, 590, 428 A.2d 200, 202 (1981); *Commonwealth v. Jackson*, 269 Pa.Superior Ct. 249, 409 A.2d 873 (1979).

■ Similarly, there was no merit in appellant's application to suppress the acetone and other chemicals, as well as the amphetamine, found on the premises. These substances were observed and examined by members of the Pennsylvania State Police who were charged by statute to "investigate the origin or circumstances of any fire occurring in this Commonwealth." Act of April 27, 1927, P.L. 450, No. 291, § 4, as amended, 35 P.S. § 1184. Their entry of the premises in order to investigate the origins of the fire was proper and authorized by law. Once lawfully on the premises and in a position from which they could observe objects stored therein, police could legally seize evidence in plain view. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Commonwealth v. Mitchell*, 489 Pa. 537, 540, 414 A.2d 1021, 1023 (1980); *Commonwealth v. Harris*, 479 Pa. 131, 138, 387 A.2d 869, 873 (1978); *Commonwealth v. Ginter*, 289 Pa.Superior Ct. 9, 18, 432 A.2d 1024, 1028 (1981).[6]

**6.** Appellant also questions whether probable cause existed for the issuance of a search warrant for his motel room on March 3, 1977. However, the record does not disclose that evidence seized pursuant to this warrant was introduced at appellant's trial on the instant charges. Moreover, the existence of probable cause where, as here, it was derived in large measure from information supplied by the owner of the motel, has been determined contrary to appellant's contention by decisions of this Court in *Commonwealth v. Cosby*, 234 Pa. Superior Ct. 1, 335 A.2d 531 (1975) and *Commonwealth v. McKeever*, 229 Pa. Superior Ct. 35, 323 A.2d 44 (1974).

■ Appellant also argues that the court erred in permitting the Commonwealth to introduce evidence that other chemicals used in the manufacture of amphetamines had been purchased and stored on the premises by appellant. The Commonwealth introduced this evidence in order to establish appellant's identity as the owner of the acetone and amphetamine. The evidence was relevant for this purpose, particularly in view of appellant's defense that the acetone belonged to a friend who had left it behind after visiting appellant's dwelling.

■ Appellant's final contention is that the trial court erred in denying his motion to sever the charges of risking a catastrophe and possession of a controlled substance. It is well established that the grant or denial of a severance is within the discretion of the trial judge, whose determination will be reversed only for an abuse of discretion. *Commonwealth v. Lasch*, 464 Pa. 573, 584, 347 A.2d 690, 695 (1975); *Commonwealth v. Peterson*, 453 Pa. 187, 193, 307 A.2d 264, 267 (1973) (plurality opinion); *Commonwealth v. Patrick*, 416 Pa. 437, 445, 206 A.2d 295, 298 (1965); *Commonwealth v. Brown*, 227 Pa. Superior Ct. 410, 413, 323 A.2d 223, 225 (1974). In the instant case, the two charges arose from the same criminal conduct, and no prejudice to appellant has been shown from the consolidation of the charges for trial. There was no error in refusing to sever the charges. See: *Commonwealth v. Herman*, 271 Pa. Superior Ct. 145, 153, 412 A.2d 617, 621 (1979); *Commonwealth v. Grassmyer*, 266 Pa. Superior Ct. 11, 14, 402 A.2d 1052, 1054 (1979). This is particularly so with respect to the methamphetamine charge, where appellant's guilt of possessing the same was established beyond peradventure of any doubt.

For the foregoing reasons, the judgment of sentence for risking a catastrophe is vacated, and appellant is discharged on such charge. The judgment of sentence for possession of methamphetamine, however, is affirmed.