RAYMOND A. HOSSBACH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hossbach v. Commissioner
Docket No. 10442-76.
United States Tax Court
T.C. Memo 1981-291; 1981 Tax Ct. Memo LEXIS 455; 42 T.C.M. (CCH) 80; T.C.M. (RIA) 81291; June 15, 1981. *455 Held, petitioner has not established that he is entitled to deductions for amounts paid to certain individuals under secs. 162, 165, or 166, I.R.C. 1954. Held, further, petitioner has not established that he is entitled to a theft loss under sec. 165, I.R.C. 1954; petitioner has not shown that the amount of cash stolen was in excess of the amount he recovered. Held, further, petitioner is entitled to a loss deduction under sec. 165(c)(1), I.R.C. 1954, for a building which he used in the manufacture of illegal drugs and which was destroyed in an explosion and fire. Because petitioner was not acting in violation of sec. 3302(b) of Pennsylvania New Crimes Act (18 Pa. C.S.A. sec. 3302(b)), as claimed herein by respondent, it is not contrary to public policy, as set forth in that statute, to permit petitioner to take the deduction. Raymond A. Hossbach, pro se. Marc A. Feller and Ina S. Weiner, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $ 79,372.46 in petitioner's Federal income tax for the taxable period January 1, 1976, to May 29, 1976. The following questions are presented for our consideration: (1) *456 Whether payments made by petitioner to certain individuals during the taxable period at issue reflect amounts which may be deducted under section 162, section 165, or section 166. [1]
(2) Whether the amount of money stolen from petitioner in a robbery was in excess of the $ 28,753 which was recovered, thereby entitling petitioner to a loss deduction under section 165. (3) Whether petitioner is entitled to a loss deduction under section 165 for a building which he used as a laboratory for the manufacture of illegal drugs and which was destroyed by fire. FINDINGS OF FACT Some of the facts have been stipulated by the parties, and those facts, with associated exhibits, are incorporated herein by this reference. On the date the petition in this case was filed, petitioner resided in Bellefonte, Pa. In his notice of deficiency dated August 27, 1976, respondent determined a deficiency for the taxable period January 1, 1976, through May 29, 1976, after terminating petitioner's taxable year under section 6851. The deficiency, $ 79,372.46, was assessed on July *457 6, 1976. The deficiency resulted from respondent's determination that petitioner received income during the terminated period in the amount of $ 140,639.23 due to his illegal activities in the manufacture and sale of drugs. The income determined was based on the value of drugs and cash known to be in petitioner's possession during January of 1976. During the years 1973, 1974, 1975, and a portion of 1976, petitioner was involved in the illegal manufacture and sale of drugs ("controlled substances" under Tit. 21 U.S.C. sec. 841 and under the Controlled Substance, Drug, Device and Cosmetic Act, Tit. 35 Pa. Stat. sec. 780-101). On May 29, 1976, the date of the termination assessment, petitioner was arrested in Philadelphia and turned over to the Pennsylvania State Police. He faced both State and Federal charges relating to his involvement in the illegal manufacture of drugs. Petitioner pleaded guilty to both State and Federal charges, was sentenced and incarcerated. The State charge to which petitioner pleaded guilty was the manufacture of a "controlled substance" in Tioga County, Pa., on or about January 21, 1976. One charge of the three-count indictment brought against petitioner *458 was for a violation of section 3302(b) of the New Crimes Code of the Commonwealth of Pennsylvania. Petitioner did not plead guilty to and was not convicted of this charge. Subsequent to petitioner's arrest on May 29, 1976, he told Special Agent Ellis Hershowitz of the Drug Enforcement Administration, U.S. Department of Justice, that he maintained a code book reflecting his drug transactions from the period June 1975 through March 1976, and told him where to find it. Petitioner maintained this book in a code which he decoded for Special Agent Herschowitz. This record book shows petitioner's gross receipts for the period June 1974 through January 1976. It also reflects various expenses incurred or payments made by petitioner in connection with his illegal activities. Subsequent to the termination assessment, the revenue agent assigned to the case decided to accept petitioner's record book as a more accurate reflection of his income for the terminated period January 1, 1976, through May 29, 1976. As a result, a new determination was made accepting the record book for purposes of determining petitioner's gross receipts for the terminated period. Based solely on petitioner's explanation *459 of the contents of the book, respondent agreed that petitioner did not receive more than $ 20,000 of gross receipts during the terminated period January 1, 1976, through May 29, 1976. Respondent also allowed petitioner some deductible expenses with respect to his drug activities in the amount of $ 3,000, resulting in gross income of $ 17,000. This $ 3,000 deduction, or 15 percent of gross receipts, was based on information supplied by Special Agent Hershowitz of the Drug Enforcement Administration at the request of the revenue agent. The expenditures in the code book were not allowed as deductions. Respondent's redetermination of the deficiency based on petitioner's record book resulted in a new deficiency of $ 4,187.70. Respondent has indicated that the assessment of $ 79,372.46 will be abated. During the period 1972 through January 1976, petitioner manufactured methamphetamine, a central nervous system stimulant, known as "speed," and phencycliding, generally known as "PCP." These drugs are generally injected intravenously, intramuscularly, or inhaled or eaten by the ultimate users. Petitioner would sell his drugs by the kilogram and would receive an average price of $ 17,500 *460 per kilogram of methamphetamine and $ 12,500 per kilogram of phencyclidine. In March 1975, petitioner purchased an acre of land in Tioga County, Pa., with a frame building thereon. [2] The building, previously a meeting house for the Jehovah's Witnesses, was converted into a laboratory by petitioner and used by him in his business of producing drugs. On January 21, 1976, petitioner was working in the laboratory, engaged in the manufacture of illegal drugs. The highly volatile chemicals with which petitioner was working were ignited by a hot plate used in the drug manufacturing process. [3] *461 The resulting explosion blew out the windows and the walls of the structure. Damage from the explosion and from fire was so extensive that the building was completely gutted, and the structure became worthless. [4] The damage was a direct result of petitioner's illegal drug-manufacturing activities. Subsequent to the destruction of the building, petitioner earned no income from the manufacture of drugs. He went "underground" until he was arrested on May 29, 1976. Beginning in June 1975, petitioner maintained records of his drug transactions, and he recorded in his code book, his transactions with every individual with whom he dealt. Petitioner was assisted in his drug-manufacturing activities by John Hilferty. Hilferty set up some labortories for petitioner and delivered some of the drugs to customers. Petitioner's code book shows that, in 1976, petitioner paid John Hilferty a total of $ 16,050. Hilferty had been indicted after the laboratory explosion when the police ascertained *462 his connection with the illegal activities that had been conducted there. Petitioner's purpose in paying Hilferty $ 10,000 was to induce Hilferty not to name petitioner as having been involved in the illegal activities or to disclose petitioner's whereabouts. [5]
Petitioner's code book also shows that in 1976, petitioner transferred $ 12,000 to Raymond Poserina, who was also connected with the drug-manufacturing activities. Of this amount, $ 5,000 was given to Poserina to hold "in an escrow account" in case Poserine had any legal fees to pay as a result of his activities with petitioner. The remaining $ 7,000 was a personal loan to Poserina. On April 10, 1976, petitioner was robbed at gunpoint at his residence in Furlong, Pa. Petitioner had an amount of cash in a brown paper bag in a closet, which cash was discovered by some carpet installers who were doing work in the house. They *463 returned later and robbed petitioner at gunpoint of the bag containing the money. Less than an hour later, the local police apprehended two individuals fitting petitioner's description and found $ 28,753 in cash in their possession. Petitioner originally reported to the police that $ 8,000 was taken; later he claimed that the amount stolen was $ 41,500. OPINION During the years 1973, 1974, 1975, and a portion of 1976, petitioner was involved in the illegal manufacture and sale of drugs. On May 29, 1976, petitioner was arrested. Subsequently, he pleaded guilty to both Federal and State charges relating to his involvement in the illegal manufacture of drugs. Respondent now concedes that petitioner did not receive more than $ 20,000 of gross receipts during the terminated period January 1, 1976, to May 29, 1976. Respondent also concedes that petitioner is entitled to $ 3,000 in expenses incurred in his illegal activities. Petitioner's position herein is that he is entitled to additional deductions which, if allowed, would completely eliminate respondent's revised deficiency of $ 4,187.70. Petitioner claims he is entitled to a deduction of $ 16,050, shown by petitioner's code book *464 to have been paid to John Hilferty. Petitioner contends the $ 16,050 reflects wages. Petitioner also claims he is entitled to a deduction of $ 12,000, shown by petitioner's code book to have been paid to Raymond Poserina. Petitioner contends that the $ 12,000 reflects a loan and that he is entitled to a bad debt deduction. Respondent counters that petitioner has not established that he is allowed to deduct either payment as an ordinary and necessary business expense under section 162(a)(1), as a loss under section 165(c), or as a business or nonbusiness bad debt under section 166. We agree with respondent. Petitioner has plainly not carried his burden of proving that he is entitled to these claimed deductions. Rule 142(a), Tax Court Rules of Practice and Procedure. He has not shown that the payments in question satisfy the requirements of any of these Code sections. According to petitioner, of the $ 16,050 paid to Hilferty in 1976, $ 10,000 was provided by petitioner so that Hilferty, who had been indicted after the laboratory explosion, could secure the services of a lawyer. There is also evidence, more plausible, that petitioner paid this amount to induce Hilferty not to *465 name petitioner as having been involved in illegal activities. The payment of the $ 10,000 appears to be a personal expenditure (sec. 262); petitioner was apparently not engaged in any business operations after his laboratory burned down, and it therefore cannot be said that the payments were to protect the continuation of his business. [6] The record does not show the $ 10,000 to be wages, as petitioner contends, or to be otherwise business-related. Petitioner does not claim that the $ 10,000 payment was a loan. (We are unable to determine from the record the precise purpose for the additional $ 6,050 payment. Hilferty was employed by petitioner, but only from January 1 to January 17 during the period here involved. Some of this amount might have been intended as compensation to Hilferty but there is no evidence of how much and it is unlikely that it could be $ 6,050 for such a short period. Furthermore, we do not know how much in wages was included in the $ 3,000 of expense deductions allowed by respondent.) Of the $ 12,000 paid to Poserina in 1976, *466 $ 7,000 was a personal loan from petitioner. The record is inadequate to establish petitioner's entitlement during the taxable period at issue to a deduction for this amount under either section 165 (Losses) or section 166 (Bad Debts). We have no evidence that the amount became uncollectible during the period here involved. We simply have no information about this loan transaction. (The same can be said with reference to the $ 6,050 paid to Hilferty, to the extent that payment constituted a loan.) Petitioner also paid $ 5,000 to Poserina to cover potential legal fees resulting from Poserina's illegal activities with petitioner. As was the case with the $ 10,000 paid to Hilferty, we are unable to view this payment as business related. Nor is there reliable evidence to establish that the $ 5,000 payment was a loan. [7]
In sum, petitioner has completely failed to show he is entitled to a deduction, under any Code section, *467 for the amounts he paid to Hilferty and to Poserina. We are unable to sustain the claimed deductions based on petitioner's vague assertions at trial. We have no choice but to uphold respondent's position in this regard. In April 1976, petitioner was robbed in his home at gunpoint of an amount of cash which he kept in a paper bag. Subsequently, the police apprehended the robbers and recovered $ 28,753 in cash which they had in their possession. [8] Petitioner claims that more than the $ 28,753 recovered by the police was taken in the robbery. Petitioner alleges that a total of $ 41,500 was taken and that he is entitled to a theft loss deduction for the difference between the two amounts. See sec. 165(c)(3). [9] *468 Respondent maintains that petitioner has not established that any amount in addition to the $ 28,753 was taken in the robbery, and we agree. Petitioner was not able to provide any corroboration of the $ 41,500 amount. We note that the two men arrested with the $ 28,753 were apprehended less than an hour after the robbery and petitioner offered no evidence to prove they had any accomplices. We also note that petitioner initially reported to the police that only $ 8,000 was taken. Given the fact that the only evidence of record regarding the $ 41,500 figure is petitioner's self-serving testimony, we must conclude that petitioner has failed to meet his burden of proving the facts establishing his entitlement to the loss deduction. Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioner states on brief that "Even if the Court finds that the figure $ 41,500 may be an error, it has the duty to estimate the amount of the loss," citing Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). We have no such duty. Under the rule of the Cohan case, as developed in a long line of decisions, we may estimate the amount of a deduction *469 where the evidence shows a deduction is appropriate but is deficient in establishing the precise amount, respondent has allowed no deduction. Here, the evidence shows that $ 28,753 was taken but the evidence is not adequate to show that any amount in addition to the recovered $ 28,753 was taken from petitioner. Petitioner has not established that he is entitled to a deduction. This is not an appropriate instance, therefore, in which to apply the Cohan rule. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). [10]
Finally, we deal with the question of whether petitioner may deduct the loss he incurred when the building he used as a laboratory was destroyed by an explosion and fire. The pertinent Code provision here is section 165(a), which allows "as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Further, because it is plain on the record that petitioner suffered his loss in the course of his drug-manufacturing business, petitioner's loss falls within the purview of section 165(c)(1). That section provides that an individual may take a deduction under section 165(a) *470 for "losses incurred in a trade or business." The fact that petitioner suffered his loss in connection with an illegal enterprise does not mean he is precluded from deducting that loss. "Income from a criminal enterprise is taxed at a rate no higher and no lower than income from more conventional sources." Commissioner v. Tellier, 383 U.S. 687, 691 (1966). Respondent does not dispute that a $ 9,000 loss occurred or that it ordinarily would be deductible under section 165(c)(1). Nor does respondent contend that the loss is nondeductible because of the illegal nature of petitioner's business. What respondent does argue is that the deduction is not allowable because the explosion and fire occurred while petitioner was knowingly using highly volatile materials in a reckless manner in violation of section 3302(b) of the New Crimes Code of the Commonwealth of Pennsylvania, 18 Pa. C.S.A. sec. 3302(b). [11] Respondent therefore asserts that the allowable of a deduction to petitioner under these circumstances would frustrate sharply defined State policy. [12] See Tank Truck Rentals, Inc. v. Commissioner, 356 U.S. 30 (1958); Mazzei v. Commissioner, 61 T.C. 497 (1974); Holt v. Commissioner, 69 T.C. 75 (1977); *471 Holmes Enterprises, Inc. v. Commissioner, 69 T.C. 114 (1977). Under the authority above-cited, it seems clear that if petitioner were in fact acting in violation of the cited Pennsylvania statute *472 and, as a consequence, caused the fire and explosion which resulted in his loss, petitioner would not be entitled to a deduction under section 165. In circumstances where a loss is directly related to conduct proscribed by a legislative body, it would obviously be inconsistent with articulated public policy to permit a tax deduction for that loss. See Mazzei v. Commissioner, supra at 501-502. The question to be resolved in the present case is, therefore, whether petitioner was in fact engaged in conduct that was violative of Pennsylvania statutory law, as claimed by respondent. Section 3302(b) of the New Crimes Code (quoted in full in n. 11, supra) requires a showing of various factor before a person can be found to be in violation thereof. The person must create "a risk of catastrophe"; he must do so in the employment of certain specified means (described in section 3302(a) of the New Crimes Code as a "harmful or destructive force or substance, or * * * any other means of causing potentially widespread injury or damage"); and he must do so "recklessly." See, in general, Commonwealth v. Hughes, 364 A.2d 306 (Pa. 1976). That case states that, under section 3302(b), there must be *473 "a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 364 A.2d at 311. The Hughes case further provides that section 3302(b) is addressed to "the use of dangerous means by one who 'consciously disregards a substantial and unjustifiable risk' and thereby unnecessarily exposes society to an extraordinary disaster." 364 A.2d at 311. The record shows that petitioner was aware of the highly volatile nature of the dyel-ethel ether with which he worked, although we infer from his testimony that he was not fully aware of its destructive potential. The explosion occurred when dyel-ethel ether vapors reached a hot plate which had been turned on. The record further shows that, while petitioner was charged, inter alia, with a violation of section 3302(b) of the New Crimes Code, he did not plead guilty to the charge, and he was not convicted. While the record is by no means as complete as we would like it to be on this question, it is adequate to convince us that petitioner did not "recklessly create a risk of catastrophe," as contemplated by the statute, even if we assume that dyel-ethel either is one of the substances to which the *474 legislature had reference in enacting the legislation. We believe that, at worst, petitioner acted in a negligent manner on the day of the explosion and that he was not cognizant of the extent of the risk he was taking. We see no "gross deviation" from a reasonable standard of conduct. We do not believe petitioner "consciously disregard[ed] a substantial and unjustifiable risk" which "expose[d] society to an extraordinary disaster." Commonwealth v. Hughes, supra.It is our view, based on the entire record, that petitioner did not come within the purview of the Pennsylvania statute. [13] *475 Accordingly, we conclude that, to permit petitioner to take the sought loss deduction would not frustrate the sharply defined public policy of the Commonwealth of Pennsylvania, as set forth in section 3302(b) of the New Crimes Act. Respondent does not advance any other theory for denial of the deduction, and we therefore conclude that petitioner is entitled to deduct his loss of $ 9,000 under section 165(c)(1). [14] *476 Consistent with the foregoing discussion, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years at issue.↩
2. Petitioner's original cost basis in this real property was $ 12,000. The parties agree that, of this amount, $ 3,000 is allocable to the land and $ 9,000 is allocable to the building. Petitioner testified that the improvements cost $ 1,000, but he did not substantiate this fact.↩
3. While petitioner was well aware of the volatility of the substances with which he was working, we infer from the evidence that he was not fully cognizant of the danger or of the potential destructiveness of the materials he was using. 4. The destroyed building had been insured against fire damage. However, the insurance company denied petitioner's claim since the activity which caused the fire, the manufacture of drugs, was not disclosed to the insurance company and was not a risk which was covered by the insurance policy.↩
5. The record is unclear whether the remaining $ 6,050 was a loan to Hilferty or an advance on moneys which petitioner anticipated he would owe Hilferty or whether the money served some other purposes. We are unable to conclude on this record that the $ 6,050 payment was for wages, as petitioner contends.↩
6. In view of this conclusion, we do not reach respondent's contention that so-called hush money would be nondeductible in any event.↩
7. None of the advances to Poserina was evidenced by a note, nor was there any agreement as to the payment of interest. Petitioner did not show any debt was uncollectible or that action to collect it would be futile. See secs. 1.166-1 and 1.166-2, Income Tax Regs.↩
8. Most of the $ 28,753 was eventually obtained by the Internal Revenue Service and has been applied against petitioner's outstanding tax liabilities. ↩
9. Sec. 165(c)(3) provides, inter alia, that the loss deduction to be taken by an individual under sec. 165(a) "shall be limited to * * * losses of property not connected with a trade or business, if such losses arise * * * from theft." Each loss is deductible to the extent it exceeds $ 100. The deduction claimed by petitioner is $ 12,647 ($ 41,500, less $ 28,753 and less $ 100).
10. DeMonaco v. Commissioner, T.C. Memo. 1981-17↩.
11. Sec. 3302 of the Pennsylvania New Crimes Code (18 Pa. C.S.A. sec. 3302) provides: Sec. 3302. Causing or risking catastrophe. (a) Causing catastrophe.--A person who causes of catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage, commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly. (b) Risking catastrophe.--A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section. ↩
12. Respondent does not make a similar public policy argument based on the fact that the explosition and fire occurred while petitioner was manufacturing illegal drugs. We therefore give no consideration to this question.↩
13. At trial, counsel for respondent stated the loss was not deductible "because it was a * * * direct result of an illegal activity." The stipulation filed by the parties states that "The explosion and fire directly resulted from the illegal drug manufacturing activities of petitioner." No mention appears to have been made of section 3302(b) of the New Crimes Code, and we are doubtful that petitioner was adequately apprised that respondent's public policy argument would be based on that provision. Had petitioner received adequate notice of the specifics of respondent's contention, he would have had an opportunity at trial to provide more evidence or testimony specifically relating to the elements of the Pennsylvania statute. Under these circumstances, we are inclined to believe that respondent had the burden of proof on the question of whether petitioner's actions were in violation of that statute, see, e.g., Estate of Falese v. Commissioner, 58 T.C. 895↩ (1972), and we conclude that respondent has failed to meet such burden. In any event, the result we reach is not premised on failure of proof.
14. In his requested findings, respondent states that "the loss was also caused by petitioner's misrepresentation to his insurance company regarding the true nature of his activities" at the laboratory building. However, in the argument portions of his briefs, respondent does not develop this point, nor does he contend that petitioner's misrepresentation to the insurance company should have a bearing on the outcome herein.