COMMONWEALTH of Pennsylvania, Appellant,

v.

Eli KARETNY, Appellee.

Commonwealth of Pennsylvania, Appellant,

v.

Michael Asbell, Appellee.

Superior Court of Pennsylvania.

Argued July 29, 2003.

Filed Oct. 27, 2003.

Reargument Denied Dec. 26, 2003.

Hugh Burns, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Frank DeSimone, Philadelphia, and Leonard Sosnov, Wyndoor, for Karetny, appellee.

John L. Jenkins, Malvern, for Asbell, appellee.

BEFORE: STEVENS and KLEIN, JJ., and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶1 Defendants were charged with 49 different counts because they allegedly continued to operate a nightclub on Pier 34 on the Delaware River in Philadelphia, knowing that the pier was in imminent danger of collapsing. It did collapse, killing three people and injuring many others. The trial court granted a motion to quash the charge of *risking* a catastrophe while allowing the charge of *failing to prevent* a catastrophe and many others to continue. The Commonwealth appeals.

¶2 The defendants move to quash the appeal, and also claim that the trial judge was correct in quashing the charge of risking a catastrophe. We deny the motion to quash the appeal but affirm the order dismissing the charge of risking a catastrophe.

### 1. The Motion to Quash the Appeal.

¶3 Defendants urge us to quash the Commonwealth's appeal claiming that this Court lacks appellate jurisdiction. The defendants make two interrelated arguments: (1) that our jurisdiction is only over final orders, and this was not a final order; and (2) that Pa.R.A.P. 311(d) illegally expands our jurisdiction to include nonfinal orders.

¶4 The order in question is clearly not final. *See* Pa.R.A.P. 341(b). We nonetheless believe that we have jurisdiction under Rule 311(d), which permits the Commonwealth to take certain interlocutory appeals:

> In a criminal case, under circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d). In claiming that this rule illegally expands our jurisdiction, the defendants point out that the statute gen-

erally establishing our jurisdiction permits appeals from final orders only:

> The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

42 Pa.C.S.A. § 742.

¶ 5 The note to Rule 311 states explicitly that the rule was enacted to implement 42 Pa.C.S.A. § 5105, which permits appeals from interlocutory orders as specified by general rule. *See* Pa.R.A.P. 311, Note. Section 5105(c) provides a right of appeal from interlocutory orders as provided by law:

> There shall be a right of appeal from such interlocutory orders of tribunals and other government units as may be specified by law. The governing authority shall be responsible for a continuous review of the operation of section 702(b) (relating to interlocutory appeals by permission) and shall from time to time establish by general rule rights to appeal from such classes of interlocutory orders, if any, from which appeals are regularly permitted pursuant to section 702(b).

42 Pa.C.S.A. § 5105(c).

¶ 6 The General Assembly evidently intended to expand our jurisdiction to include certain interlocutory appeals when it enacted section 5105(c). The only way to read sections 5105(c) and 742 compatibly is to read section 5105 as including an implicit grant of jurisdiction. We must assume that the General Assembly intended both statutes to have effect, since to conclude otherwise would be absurd. *See* 1 Pa. C.S.A. § 1932 (statutes relating to same subject are to be read as one statute); *see also* 1 Pa.C.S.A. § 1922(1), (2) (in interpreting statutes, courts must presume General Assembly did not intend absurd result, and that it intended entire statute to be effective).

██ ¶ 7 In this case, the Commonwealth has properly invoked Rule 311(d).[1] The order in question dismissed the only felony charged, risking a catastrophe. Because of speedy trial rules, the Commonwealth would otherwise be forced to proceed on the misdemeanor charges. It is only after those charges are disposed that the Commonwealth would have a final judgment involving all charges against the defendants and be able to have a final order from which to appeal.

¶ 8 If the Commonwealth were forced to wait to seek review, it could be unable to try the defendants on the felony charge under the *Campana* Double Jeopardy principle. *See Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974) (reestablishing principle that under Pennsylvania law, prosecution of defendant on charge stemming from single criminal episode precluded subsequent prosecution on another charge arising from same episode). For these reasons,

---

1. The Commonwealth claims that its certification alone is sufficient to support the appeal and that this Court cannot examine the propriety of the appeal. We agree with defendants that we do not have to "accept blindly the Commonwealth's certification of substantial handicap." *Commonwealth v. White*, 818 A.2d 555, 558 (Pa.Super.2003). Our ability to go behind the certification and examine whether the appeal is proper is borne out by our recent *en banc* decisions in *Commonwealth v. Shearer*, 828 A.2d 383 (Pa.Super.2003) (*en banc*) and *Commonwealth v. Jones*, 826 A.2d 900 (Pa.Super.2003) (*en banc*). The case on which the Commonwealth relies, *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), was decided before Rule 311(d) was promulgated.

the Commonwealth appropriately certified that the order quashing the felony charge would terminate or substantially handicap the prosecution.

¶ 9 We proceed to the merits of the appeal.

## 2. The Motion to Quash the Charge of Risking a Catastrophe.

 ¶ 10 The Honorable Benjamin Lerner, an experienced trial judge with a long background in criminal justice, thoroughly analyzed the purposes of the statutes involving *risking* a catastrophe and *failing to prevent* a catastrophe.[2] As he noted, 18 Pa.C.S.A. § 3302(b), risking a catastrophe, provides that "a person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe *in the employment of fire, explosive or other dangerous means listed in subsection (a)* of this section." 18 Pa.C.S.A. § 3302(b) (emphasis added). Of the various means referred to in subsection (a), the one pertinent to this case is "collapse of building."[3]

¶ 11 For example, if the defendants were recklessly attempting to tear down the pier, and someone was killed or ran the risk of being killed because they were working under the pier at the time, that would be *employing* "collapse of building." Here, the defendants did not "employ" the

collapse of the building—in fact, the building did not collapse until *after* they allegedly allowed people to go on it for a party.

¶ 12 If the allegations of the Commonwealth witnesses are believed, this is a classic case of *failing to prevent a catastrophe*, under 18 Pa.C.S.A. § 3303, which provides:

A person who knowingly or recklessly fails to take reasonable measures to prevent or mitigate a catastrophe, when he can do so without substantial risk to himself, commits a misdemeanor of the second degree if:

(1) he knows that he is under an official, contractual or other legal duty to take such measures; or

(2) he did or assented to the act causing or threatening the catastrophe.

 ¶ 13 The legislature distinguished between using some means to create the risk and merely ignoring a risk that is known. Penal statutes must be strictly construed, with any ambiguities being resolved in favor of the accused. *Commonwealth v. Lassiter,* 554 Pa. 586, 722 A.2d 657, 660 (1998). The legislature created a misdemeanor if an actor does not *create* the risk but merely takes no steps to prevent it. Therefore, since the defendants are not alleged to have done anything that caused the pier to collapse, but merely

2. Our scope of review is limited to determining whether the Commonwealth presented a *prima facie* case, and we reverse the trial court only for abuse of discretion. *Commonwealth v. Carbo,* 822 A.2d 60, 63 (Pa.Super.2003).

3. In its entirety, 18 Pa.C.S.A. § 3302 provides:

Causing or risking catastrophe.

(a) Causing catastrophe.—A person who causes a catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing

potentially widespread injury or damage, including selling, dealing in or otherwise providing licenses or permits to transport hazardous materials in violation of 75 Pa. C.S. Ch. 83 (relating to hazardous materials transportation), commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly.

(b) Risking catastrophe.—A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

ignored the natural forces and age of the pier and failed to prevent it from collapsing, they cannot be held to have "employ[ed] ... collapse of building," which resulted in the tragic event.

¶ 14 The dissent relies on language in section 3302 that talks of risking a catastrophe by employing "any other means of causing potentially widespread injury or damage" to conclude that the charge was proper. The real thrust of the dissent's position is that defendants, as owners of a business inviting patrons to use their facilities, failed to act when they had a duty to do so.[4] (Stevens, J. concurring and dissenting, *post* at 480.) This is simply another way of saying they failed to prevent a catastrophe. Moreover, the "any other means" quotation is taken out of context and out of the general scheme of the statute. The more complete quote is "by any other means of causing potentially widespread injury or damage, including selling, dealing in or otherwise providing licenses or permits to transport hazardous materials in violation of 75 Pa.C.S. Ch. 83 (relating to hazardous materials transportation). . . ."

¶ 15 Certainly the examples the dissent cites—driving a school bus full of children through a red light at a high rate of speed, dropping a lit match on a flammable surface, or dumping industrial and chemical wastes—are affirmative, reckless acts.[5] Conversely, allowing patrons to go to a restaurant/night club even knowing it will likely collapse amounts to failing to take action to prevent a catastrophe, not causing or risking one.

¶ 16 This semantic word-play shows that in this case the two statutes (risking versus failing to prevent a catastrophe) are in irreconcilable conflict. If two criminal statutes conflict irreconcilably, " '[i]t is the policy of the law not to permit prosecutions under the general provisions of a penal code when there are applicable special penal provisions available.' " *Commonwealth v. Warner*, 504 Pa. 600, 476 A.2d 341, 344 (1984) (quoting *Commonwealth v. Brown*, 346 Pa. 192, 29 A.2d 793, 796–97 (1943)). However, if the general statute has elements that distinguish it from the special statute, the two do not conflict at all. *Commonwealth v. Bershad*, 693 A.2d 1303, 1308 (Pa.Super.1997).

¶ 17 This is not a case where one or both of the crimes contains elements that the other does not. Although the two crimes on their face do not conflict, as applied to the facts alleged in this case they do. It is simply a matter of how one characterizes what the defendants did (or did not do). As demonstrated above, one can just as easily say that the defendants did not act when they should have, as state that they failed to prevent a catastrophe. Since we can recharacterize the defendants' alleged acts to fit into the *actus reus* of either crime, we find the statutes in conflict.

¶ 18 Because the General Assembly specifically criminalized failing to prevent a catastrophe, we cannot presume that the legislature intended under these facts that the prosecution be able to proceed under either or both statutes. *Cf. Warner*, 476

---

4. The dissent does not cite any authority for defendants' alleged duty to act in this case, although one arguably might exist under *Commonwealth v. Pestinikas*, 421 Pa.Super. 371, 617 A.2d 1339 (1992) (*en banc*), which found a duty to act in criminal law founded on a *duty to perform* assumed in contract. For purposes of argument, we will assume they had such a duty. In any event, as explained above, because both statutes might irreconcilably apply to this case, Pennsylvania law permits prosecution on failure to prevent a catastrophe only.

5. *See Commonwealth v. Scatena*, 508 Pa. 512, 498 A.2d 1314, 1318 (1985).

A.2d at 344 (because Court could not say before trial that statutes irreconcilably conflicted either on their face or as applied, prosecution could proceed under either or both statutes at least initially) *and Bershad* (crimes contained different elements). Judge Lerner did not abuse his discretion by dismissing the charge of risking a catastrophe.

¶ 19 Order affirmed.

¶ 20 STEVENS, J., files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY STEVENS, J.:

¶ 1 While I agree that we presently have jurisdiction under Pa.R.A.P. 311 to take the Commonwealth's interlocutory appeal, I respectfully dissent from the majority's opinion that defendant's alleged conduct is not proscribed by 18 Pa.C.S. § 3302(b), "Risking Catastrophe." Accordingly, I would vacate the order quashing the charge under Section 3302(b) and remand for trial.

¶ 2 In *Commonwealth v. Hughes,* 468 Pa. 502, 364 A.2d 306 (1976), the Pennsylvania Supreme Court recognized that "[t]he 'risk' proscribed by [Section 3302(b) ] is the use of dangerous means by one who 'consciously disregards a substantial and unjustifiable risk' and thereby *unnecessarily* exposes society to an extraordinary disaster." *Hughes,* 468 Pa. at 513, 364 A.2d at 311 (emphasis in original). Contrary to the majority's opinion, the "dangerous means" pertinent to the present case is not "collapse of building" as enumerated in Section 3302(a), for it would be nonsensical, indeed, to argue that defendants were engaged in the deliberate employment of collapsing the pier when the pier, in fact, collapsed. The language pertinent to our inquiry is, instead, found elsewhere in Section 3302.

¶ 3 In addition to enumerating particular harmful or destructive forces and substances, Section 3302(a), "Causing catastrophe," also generally proscribes "any other means of causing potentially widespread injury or damage." Similarly, Section 3302(b), "Risking catastrophe," makes it a felony to recklessly create a "risk of catastrophe in the employment of...other dangerous means listed in subsection (a)...." In thus criminalizing the causing or risking of a catastrophe, Section 3302 does not claim to provide an exhaustive list of subject forces, substances, or means, but allows, instead, for reasonable discretion to assess whether other unenumerated forces, substances, or means also qualify for proscription.

¶ 4 The Pennsylvania Supreme Court has, at the least, implicitly recognized that the scope of Section 3302 must exceed the limit of its enumerated forces in order to serve the purpose sought to be accomplished by the statute. In *Commonwealth v. Scatena,* 508 Pa. 512, 498 A.2d 1314 (1985), a case involving vast contamination of the Susquehanna River from defendants' practice of disposing industrial and chemical wastes into an abandoned mine shaft, the Court discussed the quantum of proof necessary to a Section 3302(b) charge. In eschewing a requirement for highly precise or technical evidence, the Court offered examples of dangerous means that would be commonly understood without expert testimony to qualify as a risk of catastrophe. One example stated:

> When a school bus driver intentionally navigates his bus full of school children through a red light at a high rate of speed and miraculously escapes collision and injuries, no expert testimony is needed to establish that the driver is guilty of risking a catastrophe.

*Scatena,* 508 Pa. at 520, 498 A.2d at 1318. Section 3302 does not enumerate the operation of public transportation, yet the Court clearly considered such operation to be among "any other means of causing widespread injury or damage" under the statute, when done so recklessly. Like the enumerated acts, driving a school bus full of people is an act to be performed with special caution because of its potential for wide devastation.

¶ 5 So, too, must proprietors or business owners who invite large, densely clustered public crowds into their establishments manage those operations with special caution, lest widespread devastation occur. Fire, occupancy, and other codes applicable to such operations bespeak the inherent dangers of accommodating large, public crowds. Promoting and using a location known to be unsafe and possibly incapable of sustaining the great weight that a public gathering of revelers will predictably bring to bear on the location's structure must be considered the means by which one risks a catastrophe.

¶ 6 Such means thus transcend merely "failing to prevent a catastrophe" as described in Section 3303, which, the majority itself acknowledges, is meant to punish those who "merely ignore a risk that is known" as compared to those who have "created the risk" in the first place. The present case is not one of simple neglect, ignorance, or abandonment of a hazardous structure that threatened to fail without curative intervention. Rather, it is one of having put a hazardous structure to use, of having employed that structure, in a dangerous manner and at the potential expense of human welfare for a profit. It was, therefore, the employment of the pier, not its stand-alone quality, that created the risk of harm and put the wheels of devastation in motion.

¶ 7 As can the struck match dropped on a flammable surface, the avalanche launched above a community, and the school bus full of children careening through a red light, a failing structure recklessly employed to accommodate a paying public can bring widespread devastation. Accordingly, I would find that the allegations here clearly make a case of felonious risk of catastrophe.