J-S47024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL THOMAS MATTHEWS | : | |
| | : | |
| Appellant | : | No. 658 MDA 2020 |

Appeal from the Judgment of Sentence Entered October 31, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003442-2018

BEFORE:   STABILE, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 01, 2021**

Appellant Michael Thomas Matthews appeals from the judgment of
sentence imposed after a jury found him guilty of arson—danger of death or
bodily injury, aggravated arson—person present inside property, and causing
catastrophe.[1]  Appellant's present counsel has filed a petition to withdraw and
an ***Anders***/***Santiago***[2] brief.  For the reason stated herein, we deny present
counsel's petition to withdraw and direct counsel to submit an amended
***Anders***/***Santiago*** brief or an advocate's brief.

A review of the record reveals the following background to this appeal.
On the morning of May 14, 2016, Appellant's wife (the complainant) called

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3301(a)(1)(i), 3301(a.1)(1)(ii), and 3302, respectively.

[2] ***Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. Santiago***,
978 A.2d 349 (Pa. 2009).

911 to report a domestic dispute with Appellant at the home they shared with their two children. While the complainant was on the phone with the dispatcher, Appellant picked up a pile of papers and set them on fire with a barbeque lighter. At that time, Appellant was standing at the top of the stairs to the second floor of the residence, and the complainant was on the first floor. The dispatcher instructed the complainant to exit the residence, and she went just outside the front door. The children were not at home during the incident.

Police officers and firefighters responded to the call. Sergeant Eric Schmidt of the Ephrata Police Department was among the first responders and, after talking with the complainant, he entered the home to locate Appellant. Sergeant Schmidt yelled out Appellant's name, and the sergeant eventually heard Appellant respond that he was not coming out and then heard a door slam and the door lock. Sergeant Schmidt then retreated to the entranceway of the home because of the heavy smoke. As he stood at the entrance, he heard Appellant's voice behind him and the complainant say, "[T]here he is." N.T. Trial Vol. 1, 8/26/19, at 88. When the sergeant turned around, he saw Appellant standing by a door inside the home. According to the sergeant, Appellant yelled in a sarcastic tone, "[T]here is a fire in here, better get the fire company." *Id.* at 88-89. The sergeant ran back into the home to get Appellant, but Appellant shut and locked the door.

When firefighters arrived, they saw a fire and a large column of smoke coming out of the left side of the home. Firefighters sprayed water from the

outside through a window and a team also entered the home, set up a hose line up the stairway, and searched the residence along with police officers. Most of the police officers had to exit the residence due to the smoke, but Sergeant Schmidt remained by the stairway. Firefighters and the sergeant eventually broke down an upstairs door, located Appellant in a closet, and rescued him. Emergency personnel transported Appellant to Lancaster General Hospital.

A fire investigator stated that the front left bedroom of the home sustained the most damage. The investigator ruled out electrical sources and other ignition sources for the fire. He concluded that the fire was mostly likely caused by "an exterior fuel source or heat source, whether it be a light[,] a match[,] or some type of open f[l]ame brought to the scene and either taken away from the scene or destroyed in the fire." N.T. Trial Vol. 2, 8/27/19 at 157. The investigator also noted that he saw a "secondary" ignition or point of origin at the top of the stairway. *Id.* at 146.

On the same day as the incident, Detective Kenneth Lockhart of the Ephrata Police Department filed a criminal complaint against Appellant. On August 21, 2019, the Commonwealth filed an amended information charging Appellant as follows: arson—danger of death or bodily injury for placing in danger firefighters, police officers and other responders (Count 1); aggravated arson—person present inside property for starting a fire while the complainant was inside the residence (Count 2); and causing catastrophe under 18 Pa.C.S. § 3302(a) for starting the fire while the complainant was inside, remaining

inside his home, and requiring rescue (Count 3).[3] Elizabeth Low of the Office of the Public Defender entered her appearance on Appellant's behalf and represented Appellant through trial and the filing of post-sentence motions.

Appellant proceeded to a jury trial, at which the Commonwealth presented the above-summarized evidence. Appellant testified on his own behalf and asserted that he and the complainant had an argument when the smoke alarms began to sound. Appellant stated that he went to the bedroom where he heard and saw the fire start at the foot of the bed. Appellant admitted that he later saw Sergeant Smith inside the home but locked the door to the bedroom. Appellant explained that he was "a little out of my head

_____

[3] Specifically, Count 3 of the amended information stated:

> **COUNT 3 - CAUSING OR RISKING A CATASTROPHE (DV) - 18 PA.C.S.A. 3302(A) - (FELONY 1)**
>
> a person did intentionally, knowingly or recklessly cause a catastrophe by explosion, fire or flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means causing potential widespread injury or damage; TO WIT: On May 14, 2018 [Appellant] did intentionally set fire to his own home. Within minutes the fire [Appellant] had started engulfed the second floor of the home. [Appellant]'s wife was inside the home when the fire was intentionally set by [Appellant]. [Appellant] remained in the home during the fire and had to be located and rescued by firefighters who were engaged in fighting the fire. Said offense occurred at Ephrata Borough, Pa

Am. Information, 8/21/19, Ct. 3. As discussed further herein, the Commonwealth charged, obtained a jury instruction, and a conviction based solely **Section 3302(a)**, which defines the felony-one offense of causing a catastrophe and not **Section 3302(b)**, which defines the felony three-offense of risking catastrophe.

at the time" but maintained that he was trying to keep the sergeant safe. N.T. Trial Vol. 2 at 182. Appellant also called the complainant to testify that she kept aromatherapy oils at the foot of her bed.

On August 27, 2019, the jury found Appellant guilty of all charges. On October 31, 2019, the trial court sentenced Appellant to serve consecutive terms of three to nine years' incarceration on each count, resulting in an aggregate sentence of nine to twenty-seven years' incarceration. Appellant timely filed a post-sentence motion to modify his sentence,[4] which the trial court denied on March 4, 2020.

On April 28, 2020, present counsel, Jade Salyards, Esq., also of the Office of the Public Defender filed a notice of appeal on Appellant's behalf, which we regard as timely pursuant to the March 17, 2020 order of this Court extending filings deadline due to the COVID-19 emergency. Present counsel subsequently filed a Pa.R.A.P. 1925(c)(4) statement of her intent to file an *Anders*/*Santiago* brief.

In her *Anders*/*Santiago* brief, present counsel identifies the following issues: (1) the sufficiency of the evidence; (2) merger of sentences; and (3) weight of the evidence. *Anders*/*Santiago* Brief at 8, 12. Present counsel also lists the following claims that Appellant wishes to raise: (1) trial strategy; (2) witness bias; (3) the discretionary aspects of his sentence; (4) his lack of

---

[4] While Appellant filed his post-sentence motion on November 12, 2019, the motion was timely filed because the tenth day after the imposition of Appellant's October 31, 2019 sentence fell on a Sunday, and Monday was the Veterans' Day holiday. *See* 1 Pa.C.S. § 1908.

motive to start the fire, (5) the qualifications of the fire investigator, who testified as an expert witness at trial, and (6) the need for a competency evaluation to support an insanity defense. *Id.* at 15-21. Appellant has not filed a response either *pro se* or with new counsel.[5]

"When faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." *Commonwealth v. Wimbush*, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to the appellant; and (3) advising the appellant that he has the right to retain private counsel, proceed *pro se*, or raise additional arguments that the appellant considers worthy of the court's attention. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

Additionally, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in *Santiago*, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling

---

[5] The Commonwealth has not filed a brief in this appeal.

case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Only after determining that counsel has satisfied these technical requirements may this Court "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted); ***accord Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Here, present counsel has complied with the procedures for seeking withdrawal by filing a petition to withdraw, sending Appellant a letter explaining her appellate rights, and supplying Appellant with a copy of the ***Anders***/***Santiago*** brief. ***See Goodwin***, 928 A.2d at 290. Moreover, present counsel's ***Anders***/***Santiago*** brief complies with the requirements of ***Santiago***. Present counsel includes a summary of the relevant factual and procedural history, refers to the portions of the record that could arguably support Appellant's claims, and sets forth the conclusion that the appeal is frivolous. Accordingly, we conclude that present counsel has met the technical requirements of ***Anders*** and ***Santiago***, and we now conduct an independent review the issues raised in present counsel's ***Anders***/***Santiago*** brief, but in an order different than set forth in the brief.

**Unpreserved and Non-Cognizable Claims**

As noted above, present counsel identifies appellate issues concerning (1) the weight of the evidence, (2) his lack of motive to start a fire, and (3) the expert's alleged bias toward finding arson. Additionally, Appellant wishes to challenge trial counsel's strategy and alleged failure to request a competency evaluation. For the reasons that follow, we conclude that the record establishes that these issues were not preserved before the trial court and therefore cannot be heard by this Court.

First, as to a challenge to the weight of the evidence, Pennsylvania Rule of Criminal Procedure 607 states that an appellant must request a new trial based on the weight of the evidence "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). The failure to raise a weight-of-the-evidence claim before the trial court results in waiver. *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009); *Commonwealth v. Cox*, 231 A.3d 1011, 1018 (Pa. Super. 2020). Because Appellant did not present a challenge to the weight of the evidence, this issue cannot be reviewed on appeal. *See Sherwood*, 982 A.2d at 494.

Appellant's intended issues regarding his lack of motive and the expert's alleged bias are essentially matters affecting the jury's consideration of the weight of the evidence. Therefore, we cannot hear these claims because they were not raised before the trial court.

Lastly, to the extent Appellant disagrees with his counsel's trial strategy and the alleged failure to obtain a competence evaluation to support a defense

of insanity, it is well settled that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002); *see also Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013) (discussing exceptions to the general rule stated in *Grant*). Moreover, present counsel, who is a public defender, cannot raise the ineffectiveness of another attorney in the same public defender's office. *Commonwealth v. Spotz*, 18 A.3d 244, 329 n.52 (Pa. 2011).

Instantly, Appellant did not preserve claims of his trial counsel's ineffectiveness in the trial court. *See Holmes*, 79 A.3d at 563-64. In any event, he cannot do so while represented by another attorney from the same public defender's office. *See Spotz*, 18 A.3d at 329 n.52. Therefore, we discern no basis to consider Appellant's ineffective assistance of counsel claim in this direct appeal.

For the foregoing reasons, we conclude that we cannot consider Appellant's intended claims for relief concerning the weight of the evidence, his lack of motive, witness bias, trial strategy, and the lack of a competence examination. Accordingly, we determine that these claims are frivolous for the purpose of this appeal.

## Sufficiency

Present counsel next identifies claims concerning the sufficiency of the evidence to convict Appellant for arson—danger of death or bodily injury,

aggravated arson—person present inside property, and causing catastrophe.

As detailed below, present counsel asserts that each claim is frivolous.

Initially, we note our standard of review:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Kendricks*, 30 A.3d 499, 508 (Pa. Super. 2011) (citation omitted).

### *Arson*

Present counsel asserts that sufficiency-of-the-evidence challenges to arson—danger of death or bodily injury and aggravated arson—person present inside property are frivolous because there was ample evidence that Appellant (1) set a fire that was incendiary in origin, (2) recklessly placed first responders in danger when he remained inside, and (3) he set a fire while the complainant was inside the home. *Anders*/*Santiago* at 9-10.

Section 3301 defines arson in relevant part, as follows:

**(a) Arson endangering persons.—**

(1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or

explosion, whether on his own property or on that of another, and if:

> (i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; or

\* \* \*

**(a.1) Aggravated arson.—**

(1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

\* \* \*

> (ii) he commits an offense under this section which is graded as a felony when a person is present inside the property at the time of the offense.

18 Pa.C.S. § 3301(a)(1)(i), (a.1)(1)(i).

Instantly, a review of the record establishes that Appellant initially started a fire at the top of the stairs when he began burning papers while the complainant, his wife, was still inside the home. Furthermore, the Commonwealth presented testimony that Appellant started a second fire in the complainant's bedroom and provided expert evidence that the fire was started with an external heat source, such as a lighter or match. After the fire broke out, Appellant remained inside the home despite seeing police officers and firefighters arrive. When Sergeant Schmidt ran toward him, Appellant ran further into the burning home and locked the door.

Having reviewed the record and present counsel's analysis, we agree with present counsel's assessment that sufficiency challenges to the arson— danger of death or bodily injury as to the officers and firefighters and aggravated arson—person present inside property as to the complainant are frivolous.[6]

### *Causing Catastrophe*

The jury convicted Appellant of causing catastrophe pursuant to 18 Pa.C.S. § 3302(a). Present counsel asserts that a sufficiency challenge to causing catastrophe is frivolous. Present counsel notes:

> A person commits the offense of causing a catastrophe when he causes a catastrophe by fire, flood, or any other means causing potentially widespread injury or damage. In order to be convicted of a felony of the first degree under that subsection, a person must cause the potential catastrophe intentionally. In order to be convicted the Commonwealth must prove the following: (1) that a person causes an event; (2) that event could result in

---

[6] Counsel also identifies a possible sentencing merger claim concerning the two arson convictions. **See** 42 Pa.C.S. § 9765 (stating that "[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense" and that "[w]here crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense"); **see generally Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009) (stating that merger for sentencing purposes involves the legality of a sentence, and the standard and scope of review is *de novo* and plenary, respectively). However, the record establishes that Appellant committed several separate acts, igniting a fire at the top of the stairs and one in the bedroom, and then he attempted to run away from responding officers and firefighters. Further, arson—danger of death or bodily injury and aggravated arson—person present inside property, identify different victims, *i.e.* officers and firefighters responding to the fire, and those present inside the property when the fire is started. Accordingly, we agree with present counsel that the arson offenses do not merge.

widespread injury or damage; and (3) that person acted either knowingly, intelligently, or recklessly.

In this case, the Commonwealth presented testimony from [the complainant] that she witnessed [Appellant] intentionally set fire to pieces of paper that he threw on the ground, which caused the fire. The Commonwealth also presented evidence that the house fire had the potential to spread to other homes in the area. The Commonwealth additionally presented testimony from officers who witnessed [Appellant] lock the door and flee upstairs into the home.

**Anders**/**Santiago** Brief at 11 (some capitalization omitted).

The Crimes Code defines causing or risking catastrophe as follows:

**§ 3302. Causing or risking catastrophe**

**(a) Causing catastrophe.—**A person who causes a catastrophe by . . . fire . . . commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly.

**(b) Risking catastrophe.—**A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

18 Pa.C.S. § 3302.

For purposes of background, we note that standard suggested jury instruction[7] defines causing catastrophe by stating that "[a] defendant causes

---

[7] We emphasize that Appellant does not challenge the trial court's jury instruction. Therefore, we need not address the instructions. Our reference to the standard suggested jury instruction is intended only to provide background that is necessary for our review of the sufficiency of the evidence and the elements of causing catastrophe. **See Kendricks**, 30 A.3d at 508 (indicating that this Court will deem the evidence "sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt").
*(Footnote Continued Next Page)*

a catastrophe by performing some inherently dangerous act . . . and thereby creates a situation capable of causing widespread injury or damage, **regardless of whether such injury or damage actually occurs**." Pa.SSJI (Crim) § 15.3302A (emphasis added). The note to the suggested jury instruction indicates that "the leading case discussing the nature of the concept of 'causing a catastrophe' is ***Commonwealth v. Hughes***, 364 A.2d 306 (Pa. 1976)." The note also cites ***Commonwealth v. Scatena***, 498 A.2d 1314 (Pa. 1985).

In ***Hughes***, the defendant worked for an ink products manufacturer, and while carrying a pail of a highly flammable solvent from one location to another, he spilled the solvent along the way. ***Hughes***, 364 A.2d at 308. The defendant placed the pail on the ground, and then he lit a cigarette. ***Id.*** When he dropped the lit match, his shoes caught fire, and he kicked off his shoes, which resulted in fire that spread to eight-alarms and caused the death of two firemen, numerous injuries, extensive property damage, and the evacuation of neighboring homes. ***Id.*** at 308-09.

The Commonwealth in ***Hughes*** charged the defendant with two counts of involuntary manslaughter and one count of risking catastrophe under

---

We add that the Pennsylvania Bar Institute publishes the Pennsylvania Standard Suggested Jury Instructions. Courts have referred to standard suggested jury instructions as persuasive evidence that a charge is an accurate reflection of the definitions of offense. ***See, e.g.***, ***Commonwealth v. Prosdocimo***, 578 A.2d 1273, 1276 (Pa. 1990). However, it is well settled that the standard suggested jury instructions are "not conclusive, but merely a guide." ***Commonwealth v. Clark***, 683 A.2d 901, 907 (Pa. Super. 1996).

**Section 3302(b)** of the then-newly enacted Crimes Code, but did not charge under **Section 3302(a)** for causing catastrophe.[8]  *Id.* at 308.  The defendant filed a motion to quash the risking catastrophe charge, which the trial court granted based on its conclusion that the term "catastrophe" as used in Section 3302 was unconstitutionally imprecise.  *Id.* at 309.  Our Supreme Court reversed.

The **Hughes** Court initially discussed the statute as a whole, noting: "Section 3302 attempts to meet two separate and distinct societal harms.  In paragraph (a) **it purports to punish [f]or the damage caused** by the mishandling of certain enumerated highly dangerous forces or substances.  Paragraph (b) addresses the [e]xposure to harm created by the misuse of these forces or substances."  *Id.* (footnotes omitted) (emphasis added).

The Court then concluded:

_____

[8] At the time our Supreme Court decided **Hughes**, Section 3302(a) stated:

> A person who causes a catastrophe by explosion, fire, flood, ava[]lanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly.

**Hughes**, 364 A.2d at 310 n.5 (citation omitted).  Although the General Assembly has amended Section 3302 since the **Hughes** decision to include other highly dangerous forces or substances, the elements of the current versions of Section 3302(a) and (b) remain substantially similar to the version of the statute discussed in **Hughes**.

- 15 -

[T]he term 'catastrophe' is sufficiently precise to designate the extent of the harm sought to be prevented by this section. Reading sections (a) and (b) together, it is clear that the forces or substances intended to be regulated are those which are capable 'of causing . . . widespread injury or damage'. Thus, construing Section (b) in accordance with the fair import of its terms **the word 'catastrophe' is intended to be synonymous with 'widespread injury or damage.'** Among the meanings offered for the word, 'catastrophe' in Webster's Third New International Dictionary (G. & C. Merriam Co. 1966), is 'an extraordinary disaster'. Roget's Thesaurus (Garden City Books, Revised Ed.1936), supplies 'calamity' and 'disaster' as suitable synonyms. We believe that the term 'catastrophe' as used here conveys not only a quantitative but a qualitative distinction. The degree of precision is comparable in our judgment to the well-known distinction between a simple assault and an aggravated assault.

*Id.* at 312 (emphasis added).

However, in reversing the trial court's ruling, the *Hughes* Court specifically declined to address Section 3302(a). *Id.* at 310 (stating that the Court would "only consider the constitutional challenge that was properly before the court, *i.e.*, the challenge to Section 3302(b)"). Therefore, focusing on Section 3302(b), the *Hughes* Court stated:

[A]n analysis of the section in question the historical note appended calls attention to the fact that the section has been taken from the Model Penal Code, Section 220.2. Setting forth the purpose sought to be accomplished by this provision, the Comment to the Model Penal Code states:

'This section introduces a new concept in Anglo-American penal law. It is patterned on European legislation dealing with activity creating a 'common danger.' Fire, dealt with by the law of arson, is the prototype of forces which the ordinary man knows must be used with special caution because of the potential for wide devastation. Modern legislation puts explosion, flood, poison gas, and avalanche in the same category, and modern technological

- 16 -

> development alerts us to possibilities of catastrophe in mishandling radioactive material.'

> It is thus apparent that the legislature recognizing the catastrophic effects that can result from the reckless use of the enumerated forces or substances determined to punish under Section 3302(b), those who would expose the public to an unreasonable risk because of their reckless handling of these forces or substances.

*Id.* at 310-11 (footnote omitted).

Similarly, in *Scatena*, our Supreme Court considered a sufficiency challenge where the defendant was convicted under Section 3302(b), and not Section 3302(a). In that case, the defendants poured "hundreds of thousands of gallons of untreated industrial and chemical wastes into a borehole" which ultimately released hazardous materials into the Susquehanna River, a "major waterway in the Luzerne County area serving the population in many significant ways." *Scatena*, 498 A.2d at 1315-16. Once detected in the river, the Commonwealth began containment efforts, which managed to control the pollution, although measurable amounts of contaminants persisted for several months after the incident. *Id.* at 1316. Following the defendants' conviction for risking catastrophe under Section 3302(b), the defendants appealed, and this Court affirmed.

Our Supreme Court, in *Scatena*, reversed this Court and affirmed the defendants' convictions under Section 3302(b), reiterating that the offense addressed the exposure to harm created by the misuse of inherently dangerous forces or substances. *Id.* at 1316-17 (discussing *Hughes*). The Court emphasized that the Commonwealth sufficiently proved its theory that

the defendant "risked a catastrophe" rather than causing a catastrophe. *Id.* at 1317.

The *Scatena* Court explained:

The fact that swift and effective governmental intervention limited the deleterious effect of [the defendants'] reckless conduct does not decriminalize their actions. **The fact that an actual devastating catastrophe was averted is of no moment in assessing [the defendants'] conduct in terms of Section 3302(b)—exposing society to widespread damage**. The massive discharge of dangerous wastes into the Susquehanna River which, in spite of immediate detection and vast and expeditious containment measures, within two days, contaminated the water way for some [sixty] miles downstream is conduct that risks a catastrophe.

*Id.* (emphasis added).

Our review establishes that a conviction for risking catastrophe under Section 3302(b) does not require the actual occurrence of a catastrophe which is defined as widespread injury or damage. *See Scatena*, 498 A.2d at 1317; *Hughes*, 364 A.2d at 312. Rather, the focus of Section 3302(b) is the reckless handling of inherently dangerous forces or substances that expose the public to an unreasonable risk, regardless of whether a catastrophe actually occurs. *See Scatena*, 498 A.2d at 1317; *Hughes*, 364 A.2d at 310-11.

Here, Appellant was convicted for causing catastrophe under **Section 3302(a)**, which expressly states that "a person who **causes a catastrophe** by . . . fire . . . commits a felony[,]" rather than risking catastrophe under **Section 3302(b)**, which permits a conviction if the person "recklessly creates a risk of catastrophe[.]" *See* 18 Pa.C.S. § 3302(a)-(b); *see also* N.T. Jury

- 18 -

Trial Vol. 2 at 230 (indicating the jury's guilty verdict for causing catastrophe); Information, 7/6/18 (indicating the Commonwealth charged Appellant with felony-one "causing or risking catastrophe" under Section 3302(a)). For the above reasons, including the textual differences between Section 3302(a) and Section 3302(b), we are constrained to respectfully disagree with scholarly commentary applying the cases concerning Section 3302(b) with equal force to Section 3302(a). **See generally**, Pa.SSJI (Crim) § 15.3302A & Note (discussing **Scatena** and **Hughes**).

Further, our research reveals only one published decision expressly considering Section 3302(a).[9] In **Commonwealth v. Bostian**, 232 A.3d 898, 906 (Pa. Super. 2020), *appeal denied*, 244 A.3d 3 (Pa. 2021), the trial court dismissed charges of involuntary manslaughter, recklessly endangering another person, and causing catastrophe related to a derailment of an Amtrak commuter train that caused numerous deaths and multiple injuries. **Bostian**, 232 A.3d at 902-03. This Court reversed, concluding that the Commonwealth presented a *prima facie* case that the defendant, who had been the engineer operating the train, engaged in conduct amounting to recklessness. **Id.** at

_____

[9] Indeed, a Westlaw search for "3302 & cause & catastrophe" revealed only one 2013 memorandum decision discussing a charge under 3302(a), and one 2020 memorandum decision discussing the sufficiency of the evidence for causing a catastrophe. The latter case, **Commonwealth v. Morgan**, 240 A.3d 206, 2020 WL 5092808 (Pa. Super. filed Aug. 28, 2020) (unpublished mem.), involved a claim that the defendant did not start the fire that burned two abandoned buildings, resulted in a risk of a building collapse, and caused the death of a person in one of the buildings. **See Morgan**, 2020 WL 5092808 at *1-4, 6. Specifically, the defendant in **Morgan** claimed that another person started the fire. **Id.** at *6.

914. While the **Bostian** Court reversed the trial court's ruling, it did not expressly consider whether the actual injuries and death that occurred in that case were necessary to sustain the charge for causing catastrophe under Section 3302(a).

Accordingly, our review of relevant legal authority reveals no settled basis to hold that a conviction for causing catastrophe under Section 3302(a) may be sustained without proof of actual widespread injury or damage. Accordingly, there is at least a colorable basis for Appellant's challenge to the sufficiency of the evidence for his conviction for causing a catastrophe under Section 3302(a) based on the Commonwealth's failure to prove that the defendant actually caused a catastrophe. **See** 18 Pa.C.S. § 3302(a).

Instantly, present counsel defined the elements of the offense under Section 3302(a) as "knowingly, intelligently [sic], or recklessly" causing an event that could result in widespread injury or damage. **See Anders/Santiago** Brief at 11. Present counsel then refers to portions of the record indicating that there were other homes near the fire and that Appellant ran further into the home and locked the door. **See id.**

For the reasons stated herein, present counsel's analysis could demonstrate the frivolity of a sufficiency challenge for **risking catastrophe** under Section 3302(b). **See Scatena**, 498 A.2d at 1317; **Hughes**, 364 A.2d at 310-11. However, present counsel's analysis overlooks the unresolved issue of whether **causing catastrophe** under Section 3302(a) actually

requires the occurrence of a catastrophe.[10]  Accordingly, we conclude that there appears to be an issue of arguable merit in this appeal that preclude us from granting present counsel's petition to withdraw.

Therefore, we deny present counsel's petition to withdraw and direct counsel to file an amended **Anders**/**Santiago** brief that shall include a more thorough consideration of Appellant's intended challenge,[11] or to file an advocate's brief.

Petition to withdraw denied with instructions.  Panel jurisdiction retained.

Judge Strassburger did not participate in the consideration or decision of this case.

_____

[10] Moreover, present counsel's analysis omits any discussion of the fact that Appellant's conviction was for felony-one causing catastrophe and the reference to recklessness is inapt.

[11] Because we have identified one issue warranting further action by present counsel, we need not consider the remaining discretionary aspect of sentencing claim addressed in present counsel's **Anders**/**Santiago** brief. Such a discussion may be moot if present counsel elects to file an advocate's brief and/or decides to include that issue on appeal.

If present counsel elects to file an amended **Anders**/**Santiago** brief, we note that counsel must explain and analyze the alleged frivolity of Appellant's intended sentencing claim in light of his post-sentence motion and based on the record. **See Santiago**, 978 A.2d at 361.